(C.D. 4145)

BORDER BROKERAGE CO., INC. v. UNITED STATES

United States Customs Court, Third Division

(Decided December 11, 1970)

*Glad & Tuttle* (*George R. Tuttle* and *Hudson F. Edwards* of counsel) for the plaintiff.

*Carl Eardley*, Acting Assistant Attorney General (*Herbert T. Posner* and *Susan C. Cassell*, trial attorneys), for the defendant.

Before RICHARDSON, LANDIS, and ROSENSTEIN, Judges

RICHARDSON, Judge: The merchandise covered by the entry at bar, imported at Sumas, Washington, from Canada, is described on the entry as "1 Madill Mobile Spar Tree & Yarder S/N's 42046 and 41195." The merchandise was classified in liquidation under item 692.15 of the Tariff Schedules of the United States at the duty rate of 10 per centum

ad valorem, with an allowance in duty being made pursuant to item 807.00 of the tariff schedules for certain parts of American origin which were assembled abroad. Item 692.15 provides for duty at the rate of 10 per centum (column 1 rate) on:

> Motor vehicles specially constructed and equipped to perform special services or functions, such as, but not limited to, fire engines, mobile cranes, wreckers, concrete mixers, and mobile clinics.

In its timely protest filed June 4, 1968, plaintiff claimed that the "Mobile Spar Tree" and other similar merchandise described in and covered by the [entry] were properly dutiable at 9.5 per centum ad valorem under item 692.40 of the tariff schedules which covers:

> Fork-lift trucks, platform trucks and other self-propelled work trucks, and platform tractors; all of the foregoing of off-the-highway types used in factories, warehouses, or transportation terminals for short-distance transport, towing, or handling of articles; and parts of the foregoing trucks and tractors.

And by way of amendment of its protest on November 14, 1969, plaintiff added the following claim:

> We claim the merchandise to be properly dutiable at 6.5% under Item 692.10.

Item 692.10 covers:

> Motor vehicles (except motorcycles) for the transport of persons or articles:

|  | * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|---|

692.10  Other _____  6.5% ad val.

At the trial plaintiff's counsel abandoned the claim originally made in the protest under item 692.40, and proceeded to trial on the basis of the amended protest claim under item 692.10. Only one witness, called on behalf of plaintiff, testified in the case. Charles A. Madill, managing director of S. Madill Limited, testified that Madill manufactures logging equipment, specifically, mobile spar yarders, yarding cranes, and other related items. With respect to the description of the merchandise covered by the involved entry, the witness testified as follows (R. 5–6):

> Q. Now, I show you an entry 259 [sic] of January 31, 1967; are you familiar with the merchandise contained on that entry?— A. Yes.
> Q. Which is described as the mobile spar tree and yarder, and then it says on the commercial invoice "1 only Madill 90′ 'S' series mobile spar complete with roller bearing fairleads with 30″ mainline sheave and 18″ haulback sheave, guyline blocks, five stage raising ram, hydraulic guyline winches and pump all mounted on M4A3, Allis Chalmers crawler #1010 with Madill angle drive

installed to drive crawler from Madill yarder model 3–400 type 109 D.P. powered with 12 V 71 G.M. diesel engine serial #10385 with disc type line tensioners, two 200 gallon fuel tanks, yarder frame and running boards."

Are you familiar with that? Is that a typical type of description of the merchandise?—A. Yes.

Q. Manufactured by your company?—A. Yes.

The witness testified that he has seen the articles thus described in use in British Columbia, Washington, Oregon, California and Alaska in wood locations on coastal areas in transporting logs from the stump to the landing on the side of the road. According to the witness, the mobile spar and yarder are mounted on a M4A3 military tank under-carrier, which, with the spar in raised angular position, is driven to inaccessible wooded areas where the spar tree, measuring 90 feet in length, is positioned vertically, supported on its base by hydraulic jacks and held upright by guylines fastened to stumps. Then, in words of the witness (R. 14):

The main line from the wench [sic] which is also an inch-and-a-quarter cable, is taken up to a position in the woods where it is connected with the haulback line. It comes off the top of the tree and goes out and through a block which is attached to a stump in the woods and connected with the main line. In other words, if you can visualize it, it is something like a clothesline, and where the main line and the haulback join, there are cables hung which are called chokers, and these chokers are attached to the log. The func-tion of the haulback line is to pull the main line with these chokers out, and the function of the main line is to hold or transport the logs into the landing.

Pictorial exhibits in the record (illustrative exhibits 1 and 2) depict the spar tree in operating (vertical) position and in dormant (angular) position, respectively. When the logs have been brought out to the landing in this fashion they are then loaded onto trucks by a shovel loader and taken away.

With respect to the vehicular functions of the tank undercarriage, the following testimony was brought out on cross-examination of the witness Madill (R. 22–23):

Q. Now, you testified as to how it transports logs, but its motor vehicle function in no way has anything to do with its transport-ing the logs?—A. Do you mean does it transport them on its back?

Q. Right.—A. No.

Q. And the fact that it is mobile has nothing to do with the operation of moving the logs; the logs are moved on guy lines while the machine is, in fact, stationary?—A. Yes.

Q. It performs its job when stationary?—A. Yes.

Q. It cannot perform its job when moving?—A. No.

Q. When the logs are transported to the landing area, they are being transported by means of overhead lines?—A. The cables, yes.

And with respect to the function of the yarder, the witness testified on cross-examination (R. 24–25) :

> Q. Now, the logs are moved by means of the yarder; is that correct?—A. Yes.
>
> Q. Does the yarder function as a wench [sic] ?—A. Yes.

The witness had previously stated that the yarder is a machine with a primary power unit and two or three drums containing the main, haulback, and straw lines. And the customs invoice, received in evidence with the official papers, contains separate serial numbers for the spar tree, yarder, and undercarriage, as follows:

> Spar Serial No. 42046
> Yarder Serial No. 41195
> Undercarriage Serial No. 1010

Plaintiff's primary contention is that the mobile spar *yarder* is a motor vehicle for the transportation of the *spar*, cables, winch and logs within the meaning of item 692.10. Defendant's main contention is that the mobile *spar* and *yarder* constitute a motor vehicle specially constructed and equipped to perform special services within the purview of item 692.15. And both parties contend, among other things, that the respective tariff provision each party relies on herein as aforesaid is more specific than the one relied upon by the other party.

The court is of the opinion that the only merchandise presently before the court under the amended protest is the mobile spar tree. It is clear, according to the description of the imported merchandise given by the witness Madill, from the commercial invoice as well as from the evidence relating to function and operation of the merchandise, that a reference to the spar tree does not include the yarder within its ambit or *vice versa*. Both the spar tree and the yarder have separate and distinctly different characters even when combined, as in the instant case. And the combination of the two articles does not produce a new article with different nomenclature as, indeed, the commercial invoice description indicates. *Cf. Frank H. Fenderson* v. *United States*, 32 Cust. Ct. 173, 175, C.D. 1599 (1954).

It does not appear of record why the protest, which was apparently prepared and filed by plaintiff-broker itself, should have singled out the spar tree for specific designation apart from the yarder, in view of the descriptive language appearing on the commercial and consular invoices. But in any case the court is limited in its dealing with the issues to the merchandise covered by the protest. And this, whether or not the parties have raised any question relative to the matter, the scope of the protest being a jurisdictional limit on the court's authority in the case. See *United States* v. *Weigert-Dagen et al.*, 39 CCPA 58,

C.A.D. 464 (1951) ; *Marshall Field & Co.* v. *United States*, 20 CCPA 225, T.D. 46037 (1932).

The words "and other similar merchandise" appearing in the protest add nothing of substance to its scope, since, in the light of the evidence, the yarder and spar tree are totally dissimilar articles which, at best, complement each other as they were designed to do. And neither does the amendment of the protest on November 14, 1969, operate to add any additional merchandise to the protest. Apart from the fact that the amendment was made more than 60 days after liquidation of the involved entry, the amendment only sought to change the classification claim advanced by plaintiff and did not seek to add additional merchandise to the protest.

In view of the limitation thus imposed on the court's consideration of the issues raised herein, it is clear that plaintiff cannot succeed in this litigation. It is quite obvious that the spar tree is not a motor vehicle of any kind. And we decline to say, at this point, what our ruling would have been regarding the classification of the spar tree and yarder had both articles been covered by the protest. Suffice it to say that we have examined the evidence with a view to making certain that the plaintiff's protest claim is only against a spar tree, and is not against the merchandise classified by the government as a spar tree and yarder. Consequently, for the reasons stated, the protest herein is overruled.

Judgment will be entered accordingly.